Estate of Gus Sachs, deceased, Louis M. Sachs and Meyer H. Sachs, Executors v. Commissioner.
Estate of Sachs v. Commissioner
Docket No. 52096.
United States Tax Court
T.C. Memo 1955-239; 1955 Tax Ct. Memo LEXIS 99; 14 T.C.M. (CCH) 960; T.C.M. (RIA) 55239; August 29, 1955
*99 Robert H. Sabel, Esq., for the petitioners. Roy E. Graham, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $3,461.67 in estate tax. The only issue for decision is whether the transfer by the decedent of his Pittsburgh residence ot his son and daughter was made in contemplation of death. Findings of Fact The estate tax return was filed with the Collector of Internal Revenue for the twenty-third district of Pennsylvania. The decedent lived for most of his life in Pittsburgh, Pennsylvania, where he was actively engaged in real estate business with his three brothers. He was married and had two children, Sylvia born about 1923 and Leonard born about 1921. Sylvia was unmarried, lived with her parents in a home which the decedent had purchased in 1942 and was employed in Pittsburgh. Leonard was married, had one infant daughter, was engaged in business with his father and uncles, and lived in Pittsburgh separate from his father. The decedent had high blood pressure as a result of which he was hospitalized seven times from 1936 to August 2, 1943, but not thereafter. He recovered and resumed his *100 normal activities after each hospital visit. The decedent frequently went to Atlantic City on vacations and decided in 1948, after considering the matter for some time, to move permanently to Ventnor, New Jersey, adjoining Atlantic City. Sylvia and Leonard intonded to remain in Pittsburgh. The decedent decided to give his Pittsburgh residence to Sylvia and Leonard so that they would have a suitable home. The three had an understanding that if either child ceased to live in the house the other would pay cash to the departing one so that each would benefit equally from the father's gift. The value of the property was $15,000. The gift was made and was reported on gift tax returns. The decedent and his wife moved with their household property to the Sea Foam Apartments, Ventnor, New Jersey, on October 10, 1948. Sylvia, Leonard and Leonard's family took possession of the Pittsburgh residence on October 10, 1948. Sylvia lived there until the summer of 1949 when she went to live with her parents in Ventnor. Leonard has continued to occupy the Pittsburgh home and has paid Sylvia about $6,000 on account of the $7,500 total for her interest in the property. The decedent continued his *101 activities in the real estate business with his brothers while living in Ventnor. He visited numerous properties, sometimes with his brothers, communicated with his brothers and others by telephone and otherwise and conferred in Ventnor with his brothers on business matters. He was engaged in business until a day or two before his death. The Sachses owned an interest in the Sea Foam and the decedent acted as resident manager. It contained 29 apartments. A fire occurred at 12:15 a.m. on December 18, 1949, in one of the apartments adjacent to the one occupied by the decedent. The decedent was present and was up until late as a result of the excitement of the fire. He died on December 22, 1949, aged 60 1/2 years. The Commissioner, in determining the deficiency, held that the transfer of the residence was made in contemplation of death. The transfer was not made in contemplation of death. All facts stipulated are incorporated herein by this reference. Opinion MURDOCK, Judge: This case presents the not unusual but difficult problem of deciding from the evidence what the decedent's state of mind and purpose were at the time he gave his Pittsburgh residence to his two children. The *102 Commissioner points out that the decedent knew of his high blood pressure and argues that the decedent intended to retire, knew he had not long to live and transferred the residence in contemplation of death. There is a preponderance of evidence to show, however, that the decedent had learned to live with his ailment, was living normally for him in 1948, was not influenced to move to Ventnor by any change in his health, made the transfer to provide his daughter with a place to live and to give his son a suitable home in which to raise his family, and continued his business activities without abatement after moving to Ventnor. A man who is not in good health may, nevertheless, make a transfer which is not in contemplation of death but which is for purposes connected with life. That is what this decedent did. Decision will be entered under Rule 50.